670 P.2d 51

**GIACOBBI SQUARE, A joint venture consisting of Theodore Dolton and Catherine J. Dolton, husband and wife, Ronald L. Greene and Virginia Greene, husband and wife, Don R. Atkinson and Judy H. Atkinson, husband and wife, Stanton E. Atkinson and Mary Jane Atkinson, husband and wife, Frank E. Pearson, Sr., Joseph A. Humphrey, and Nancy L. Humphrey, husband and wife, Wayne E. Roth and Lynn Roth, husband and wife, and John Biggs, Plaintiffs-Appellants,**

v.

**PEK CORPORATION, an Idaho Corporation, d/b/a Chateau Drug, Defendant-Respondent.**

**No. 14527.**

Supreme Court of Idaho.

Sept. 15, 1983.

Larry C. Hunter, Boise, for plaintiffs-appellants.

Herman J. McDevitt, Pocatello, for defendant-respondent.

HUNTLEY, Justice.

This case involves application and interpretation of a lease renewal clause. In 1969 Anstep Corporation developed a shopping center in Ketchum, Idaho. P.E.K. Corporation was interested in locating a drug store in the shopping center. Contacts were made between the two parties resulting in several meetings during which the terms of the lease were discussed.

A lease was executed with an initial ten-year term commencing January 1, 1970, with a renewal clause reading:

"The term of the lease shall continue from its commencement for a period of ten (10) years thereafter. In addition thereto, the Lessee shall have two (2) successive options of five (5) years each, it being understood by and between the parties that the rental hereinafter set out shall be subject to renegotiation between the parties at the end of the original term and each successive five (5) year period thereafter, the standard for the said rental to provide a reasonable return on the investment of the Lessor which shall approximate the net return during the first five (5) years of occupancy."

In 1978 Anstep Corporation sold the shopping center to a group of people calling themselves the Giacobbi Square Joint Venture for approximately $1,800,000.00. In 1979 P.E.K. notified the joint venture of its intent to renew the lease, whereupon a dispute arose as to the amount of rent to be paid during the option period. The joint venture filed for declaratory judgment, declaring the renewal clause incomplete and unenforceable and a counterclaim was brought by P.E.K. for determination of the amount of rent payable.

Summary judgment was entered against the joint venture's contention that the renewal clause was incomplete and unenforceable and the trial court, following trial on the merits, determined the annual rental for the renewal term to be $20,885.00 plus

applicable pass-through expenses. P.E.K., as the prevailing party was awarded attorney fees.

The issues on appeal are whether the renewal clause is sufficiently complete to be enforceable; whether the trial court erred in determining the amount of rent to be $20,885.00 per year, and whether the trial court erred in awarding attorney fees to P.E.K.

■ Although the exact amount of rent is left to future determination, a formula for the computation of that amount is provided in the contract. A contract must be complete, definite and certain in all its material terms, or *contain provisions which are capable in themselves of being reduced to certainty. Anderson v. Whipple,* 71 Idaho 112, 123, 227 P.2d 351 (1951); *Farber v. Dewey-Davis Estate, Inc.,* 83 Idaho 394, 398, 364 P.2d 173 (1961). The formula in the renewal clause is capable of being reduced to a sum certain. Consequently, the trial court's entry of summary judgment was correct.

■ The formula for computation of the rent is to "provide a reasonable return on the investment of lessor which approximates the net return during the first five years of occupancy." The formula can be condensed to the following equation. Net rent (return) = gross rent minus expenses. In applying the formula, certain terms must be defined. Appellant argues that the term "investment" refers to the investment of the joint venture in purchasing the center, i.e., approximately $1,800,000.00. Respondent argues that the term refers to the investment of Anstep Corporation, the original lessor. The trial court correctly found that the term as used in the lease, referred to the investment of Anstep Corporation.[1] The court found the total investment by Anstep in 1970 was $816,130.00 and that no money was spent by Anstep for the period of 1970 through 1974 attributable to construction or other purposes defined as investment within the intent of the parties. However, the court failed to find the applicable investment as of 1980. Since the rate

---

1. The $1,800,000 paid by the Giacobbi group was pursuant to an investment arrangement

that did not result in any capital improvements or enhanced value to the premises.

of return achieved in the first five years must be equalled during the option period, it is necessary that we remand for the determination of that figure.[2]

 Having determined the investment attributable to the base five-year period, the trial court found for each such year the amount of rent paid by P.E.K. to Anstep, the expenses incurred by Anstep, and calculated the percentage net return. Averaging the percentage net return for the first five years, the court found that the average annual return on the investment was 10.49%. This finding is supported by substantial and competent evidence and will not be disturbed on appeal.[3]

In order to calculate the total amount of rent due, the lease provides that certain expenses must be added to the base rental figure.[4] The lease adequately covers which expenses the lessee or the lessor will pay. The trial court determined that the interest on the loan to purchase the shopping center and depreciation on the shopping center were not "expenses." This determination was correct and these "expenses" should not be passed through to the lessee.

Appellant also contends that the award of attorney fees to respondent was error in that respondent was not the prevailing party. The trial court clearly held that P.E.K. was the prevailing party. Considering the relief sought by the respective parties and the relief received by each party, we find no abuse of discretion in determining P.E.K. to be the prevailing party. The lease provided that the prevailing party in any action brought under the lease is entitled to attorney fees. The trial court awarded attorney fees under this clause as well as giving consideration to P.E.K.'s offer of judgment. Since the award was not an abuse of discretion under the terms of the lease we decline to address appellant's contentions regarding the offer of judgment.

The judgment is affirmed in part, reversed in part, and the case remanded to the trial court for further proceedings in accordance herewith. Costs to respondent. Upon conclusion of the case on remand, the trial court will determine the entitlement to attorney fees under the contract, if any, with respect to the prosecution of this appeal.

DONALDSON, C.J., and SHEPARD, BAKES and BISTLINE, JJ., concur.

---

**2.** Fluctuation of the rent due may result during each of the five years of the first and second option periods as investment and expenses change. Thus the court will have to fix separate figures for each year beyond 1980 if the parties fail to agree once the court has established the methodology for calculating the 1980 rent.

**3.** 10.49% of the $816,130 investment would total $85,609.20. That figure is multiplied by 16.76% (the portion of the shopping center which P.E.K. occupies) resulting in an average base rental of $14,348.10 for the first five years. For the reasons stated herein, this figure of

$14,348.10 is not the base rental for the years 1980–84.

**4.** The lease provides that certain enumerated expenses are borne by the lessee with the remainder to be absorbed by the lessor. The landlord is entitled to receive a 10.49% return on its investment after paying all expenses not paid by the lessee which are determined to be appropriate by the trial court. The taking of further evidence may be required if the parties cannot stipulate as to those 1980 expenses of the lessor, which must first be deducted before calculating the percentage return on investment.