823 P.2d 183

**Gilbert DANTE and Gloria Dante, husband and wife, Plaintiffs–Respondents,**

v.

**Jeffrey P. GOLAS and Holly Golas, husband and wife, Defendants–Appellants.**

No. 18500.

Court of Appeals of Idaho.

Jan. 2, 1992.

**150**

Sims, Liesche & Newell, Coeur d'Alene, for defendants-appellants. Michael J. Newell argued.

Appleton & Phillips, Coeur d'Alene, for plaintiffs-respondents. William M. Appleton argued.

SILAK, Judge.

Gilbert and Gloria Dante leased a house from Jeffrey and Holly Golas. The lease agreement ("lease-option") contained an option to purchase the property by assuming the mortgage. The Dantes informed the Golases in mid-December, 1988, that they wished to purchase the house. On December 28, 1988, the Golases sent the Dantes a letter stating that they did not want to sell the property unless the Dantes qualified with the mortgagee and assumed the mortgage with a release of the Golases from liability. Some negotiations occurred, but the Golases eventually refused to sell the property.

The Dantes sued for specific performance of the lease-option. After a bench trial, the district court concluded that the lease-option was an unambiguous and complete written expression of the parties' agreement, and that the Dantes had timely exercised their option to purchase. The court then entered a judgment directing specific performance of the sale of the house. The Golases appeal, arguing that the Dantes did not exercise the option in a timely fashion and that no enforceable contract was ever created. For the reasons stated below, we affirm the judgment of the district court.

The Golases first contend that the district court erred in concluding the Dantes timely exercised the option. The provision regarding assumption states in pertinent part:

NOTICE—If lessees wish to assume mortgage prior to 12/31/88, they agree to give owners at least 30 days notice prior to the date they wish to assume. This will enable owners to obtain and complete the proper papers.

1. *At the end of this lease, the lessees have the option of assuming the mortgage at the prevailing rate and terms.*

[Emphasis added.] This provision addresses two situations: assumption before the end of the lease on December 31, 1988, and assumption "at the end of the lease." The Golases argue that the mortgage had to have been assumed by December 31, 1988, and that therefore under the thirty-day notice provision, the Dantes had to provide notice by December 1, 1988. The district court found that, by letter sent in mid-December 1988, the Dantes had informed the Golases that they wished to close the sale of the house on January 10, 1989, and further found that the Golases received a letter on December 31, 1988, in which the Dantes once again informed them of their intent to purchase the property. The district court concluded that the Dantes had "timely and properly exercised the option to purchase."

The above-quoted language of the lease-option does not provide that an option to be exercised "at the end of [the] lease" was subject to the thirty-day notice requirement; this requirement was expressly limited to an assumption of the mortgage "prior to" December 31, 1988. As to the argument that the assumption had to have been actually completed by December 31, 1988, the lease-option contained no stated condition precedent that performance, rather than notice of intent to perform, had to take place during the option period. *See Ford v. Lord,* 99 Idaho 580, 584, 586 P.2d 270, 274 (1978). The district court correct-

ly concluded that the option was timely exercised.

▮ We next address whether the district court correctly concluded that a contract was formed. The Golases first argue that there was no meeting of the minds on whether the assumption was to be a simple assumption or an assumption with a release of liability. The minds of the parties must meet as to all the terms before a contract is formed. *Turner v. Mendenhall*, 95 Idaho 426, 429, 510 P.2d 490, 493 (1973). Whether there was a meeting of minds to all essential terms of the contract is a determination for the trier of fact. *Crittenden v. Crane*, 107 Idaho 213, 214–15, 687 P.2d 996, 997–98 (Ct.App.1984). Findings of fact by a trial court will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Clear error, in turn, will not be deemed to exist if the findings are supported by substantial and competent, though conflicting evidence. *Rasmussen v. Martin*, 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983).

▮ Having reviewed the record in this case, we conclude that there is sufficient evidence to support a finding that a meeting of the minds occurred on this issue. The district court found that the Golases did not tell the Dantes that they wanted to be released from the mortgage until December 28, 1988, just three days prior to the end of the lease. Gloria Dante testified that she told the Golases from the inception of their negotiations that she had filed for bankruptcy and would be unable to purchase the house unless the purchase was accomplished through a simple assumption. Her testimony is supported by the testimony of Diane Wright, the neighbor at whose residence the negotiations took place. The testimony of these two witnesses is substantial and competent evidence which supports the district court's implicit finding that the parties never contemplated any terms other than a simple assumption.

▮ The Golases also argue that the lease-option is ambiguous because it did not specify the type of assumption that was contemplated. The district court concluded that the lease-option was an unambiguous and complete written expression of the parties' agreement. We disagree with the district court to the extent that it found the contract unambiguous as to the assumption provision. When a lower court reaches the correct result despite application of an erroneous legal theory, we will uphold the decision on appeal by applying a correct theory to the same facts. *See* Burnett, *Standards of Appellate Review in State and Federal Courts*, IDAHO APPELLATE HANDBOOK § 3-27 (2d ed. 1989). In the present case, we conclude that the district court reached the correct result through application of an erroneous legal theory. Accordingly, as we explain below, we affirm the judgment of the district court based on a different theory of law.

▮ Whether a contract is ambiguous is a question of law which may be determined by an appellate court. *DeLancey v. DeLancey*, 110 Idaho 63, 65, 714 P.2d 32, 34 (1986); *Wood v. Simonson*, 108 Idaho 699, 701, 701 P.2d 319, 321 (Ct.App.1985). Only if a contract is subject to reasonably conflicting interpretations may we find it to be ambiguous. *See Spencer–Steed v. Spencer*, 115 Idaho 338, 345, 766 P.2d 1219, 1226 (1988); *see also Roeder Mining, Inc. v. Johnson*, 118 Idaho 96, 97, 794 P.2d 1152, 1153 (Ct.App.1990).

The lease-option contains no provision as to whether the Golases would be released from their obligation on the mortgage by the Dantes' assumption. The assumption documents from the lender indicate that the lender would allow a new buyer to assume the loan either on a simple assumption or by qualifying for the loan and releasing the original mortgagor. The burden was upon the seller to obtain the documents and initiate the qualifying process. The lease-option contains no reference to the qualifying process or to a release of liability. This omission creates an ambiguity.

▮ Extrinsic or parol evidence may be used to clarify the ambiguous terms of a written agreement. *White v. Rehn*, 103 Idaho 1, 3, 644 P.2d 323, 325 (1982). As noted above, the district court heard parol

evidence as to whether a simple assumption or an assumption with a release of liability was agreed upon by the parties. The district court's finding, supported by the evidence, that the issue of the release of liability was not raised by the Dantes until December 28, 1988, leads us to conclude that although the term relating to the assumption was ambiguous, a simple assumption was provided for in the lease-option.

■■■■ The Golases argue that the district court erred in concluding that the lease-option was enforceable even though its essential terms were unstated and uncertain. To be enforceable, a contract must be complete, definite and certain in all of its material terms, or contain provisions which are capable in themselves of being reduced to certainty. *Giacobbi Square v. PEK Corp.*, 105 Idaho 346, 348, 670 P.2d 51, 53 (1983). An agreement consummated by the exercise of an option is subject to all the principles and rules with respect to specific performance that apply generally to contracts imposing mutual obligations. It must be certain as to price, manner of payment, and description of the property. *See* 71 AM.JUR.2d *Specific Performance* § 143 (1973). The question whether an agreement is complete in all of its material terms is a question of law over which we exercise free review. *See Wood*, 108 Idaho at 701, 701 P.2d at 321.

■■■ The lease-option incorporated the residential lease agreement which stated the names of the parties and included a legal description of the property. The portion of the agreement pertaining specifically to the option and the potential assumption of the mortgage stated:

. . . .

2. Buyers are aware of all costs and procedures involved in assuming this loan.

3. The buyers will be responsible for all closing costs such as title transfer fee, loan transfer fee, title insurance, home owners insurance, reserve account, and any other costs related to assuming the mortgage.

4. The Cash Reserve Account is the property of the sellers and is to be returned to them at the time of the closing.

The price of the purchase and the terms of payment, though not specified, could easily have been reduced to certainty. The purchase price depended on when the Dantes decided to exercise the option. A copy of the mortgage papers was sent to the Dantes before they signed the lease-option; those papers contained the terms of payment. The amount of the unpaid balance could be easily verified through the mortgage lender as could the terms of payment.

The Golases also argue that the lease-option is unenforceable because it is not complete in all of its material terms. The material terms which they argue were omitted are: (1) the identity of the loan; (2) the identity of the lender; (3) the interest rate on the loan; (4) the amount of the monthly mortgage payments; (5) the outstanding balance on the loan; (6) the consideration to be paid for the option to purchase; (7) the amount and method of payment of any additional amounts constituting the Golases' equity; (8) whether the assumption was to be a simple assumption or whether the Golases were to be released from their underlying obligation on the loan; and (9) the sellers' remedies if the buyers defaulted on the mortgage.

The first five terms listed above were readily ascertainable at any time the Dantes decided to exercise the option to purchase. As to the sixth term, the option to purchase was part of the one-year lease agreement: the lessees' consideration for the option was the monthly rental payment and the commitment to rent the premises for at least one year. With regard to the seventh term, the Golases have not shown us any evidence in the record that they had any equity in the house. With respect to the eighth term, the lease-option contains a provision for an assumption which was proved by parol evidence to be a simple assumption. Finally, with regard to the remedies, a provision granting the Golases specified remedies in the event of breach was not an essential term of the lease-option; the applicable law is deemed part of an agreement and determines the par-

ties' remedies. *See Locklear v. Tucker,* 69 Idaho 84, 90, 203 P.2d 380, 384 (1949). The district court correctly concluded that the lease-option was sufficiently complete, definite and certain in all its material terms to be enforceable through a decree of specific performance.

In conclusion, we affirm the district court's judgment: as set forth above, the Dantes exercised the option to purchase in a timely manner; the assumption term provided for a simple assumption; and the lease-option contained sufficiently complete material terms to be enforceable.

The Dantes have requested an award of attorney fees and costs on appeal. The basis for the award of attorney fees is a provision of the lease-option which states:

> If, by reason of any default or breach on the part of either party in the performance of any of the provisions of this agreement, a legal action is instituted, the losing party agrees to pay all reasonable costs and attorney's fees in connection therewith.

On the basis of the parties' agreement, we conclude that attorney fees for defending this appeal are awardable. Costs and attorney fees to respondents, to be determined pursuant to I.A.R. 40 and 41.

WALTERS, C.J., and SWANSTROM, J., concur.